**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DAWN BEGIN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HEARST COMMUNICATIONS, INC.,<br><br>Defendant. | Case No. __________<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff Dawn Begin ("Plainitff"), individually and on behalf of all others similarly situated, by and through her undersigned attorneys, alleges the following based upon personal knowledge as to herself and her own acts, and upon information and belief as to all other matters based upon the investigation conducted by and through her attorneys. Plaintiff believes that additional, substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**INTRODUCTION**

1. Hearst Communications, Inc. ("Hearst") knowingly used Plaintiff's and the other Class members' names on subscriber mailing lists that it sold and rented on the open market to data miners, data aggregators, data appenders, data cooperatives, list brokers, aggressive marketing companies, and various other public parties willing to pay for them. The lists Hearst publicly sold and rented identified by name, address, and other personal attributes Plaintiff and every other Ohio subscriber to its magazine publications (including *Good Housekeeping* and *Woman's Day* magazines, to which Plaintiff subscribed). Hearst's public use of Plaintiff's persona on the mailing lists that it sold and rented and continues to sell and rent (including in connection with the *Good Housekeeping* and *Woman's Day* magazine subscriptions previously sold to Plaintiff) directly violated Ohio's Right of Publicity Law, Ohio Rev. Code §2741, *et seq.* (the "ORPL").

2. Documented evidence confirms these facts. For example, Hearst, either directly or through one or more intermediaries acting on its behalf and at its direction, and during the time

period relevant to this action, has knowingly advertised to the community at large, and sold and rented to various members of the public interested in purchasing, the list titled "GOOD HOUSEKEEPING Mailing List," which contains the full name, home address, and title of the publication subscribed to (collectively "Personal Reading Information") – as well as myriad other personally identifying attributes and demographic information such as gender, age, ethnicity, income, political party, religion, and charitable donation history – of each of the 1,715,229 active U.S. subscribers to *Good Housekeeping* magazine (including Plaintiff and each member of the Class) at a base price of "$115.00/M [per thousand]," (*i.e.*, 11.5 cents apiece), as shown in the screenshot below from list broker NextMark, Inc.'s website:



## GOOD HOUSEKEEPING Mailing List

Good Housekeeping, published by Hearst Magazines, is a leading lifestyle magazine providing readers genius innovations, delicious ideas, style-savvy trends, compelling news and best-in-class products for their homes, families and themselves. The Good Housekeeping Seal and the Green Good Housekeeping Seal are among the most recognized and trusted consumer icons in the world today.

Get Count | Get Pricing | Get More Information

| SEGMENTS | | COUNTS THROUGH 04/06/2021 |
|---|---|---|
| 1,715,229 | TOTAL UNIVERSE / BASE RATE | $115.00/M |
| 1,715,229 | ACTIVE U.S. SUBSCRIBERS | $115.00/M |
| 50,327 | MAR'21 SUBSCRIBERS | + $17.00/M |
| 663,216 | 3 MONTH SUBSCRIBERS | + $14.00/M |
| 828,701 | 6 MONTH SUBSCRIBERS | + $12.00/M |
| 697,231 | 12 MONTH EXPIRES | $60.00/M |
| 95,311 | CHANGE OF ADDRESS | + $13.00/M |
| 34,912 | CANADIAN SUBSCRIBERS | $130.00/M |
| 1,364,102 | E-MAIL ADDRESSES | |
| | FACEBOOK AUDIENCES | $25.00/M |
| | CATALOG/MERCHANDISE RATE | $80.00/M |
| | CHARITABLE FUNDRAISING | $80.00/M |

DESCRIPTION

Good Housekeeping, published by Hearst Magazines, is a leading lifestyle magazine providing readers genius innovations, delicious ideas, style-savvy trends, compelling news and best-in-class products for their homes, families and themselves. The Good Housekeeping Seal and the Green Good Housekeeping Seal are among the most recognized and trusted consumer icons in the world today.

Subscribers are on-the-go, family-oriented women whose homes are the launchpad of their lives. It is the place where they get ready to face the world, entertain their friends, take care of their families, relax and pamper themselves, and express their creativity and personalities.
They are looking for the best in food, home, beauty, fitness, and health to enhance their lives.

************** Fast Facts ****************
Median Age..............................58.5
Age 18-34...............................11.4%
Age 25-49...............................28.9%
Age 25-54...............................38.4%
Age 35-54...............................30.2%
Age 55+.................................58.4%
Median HHI..........................$65,572
HHI $75,000+............................44.1%
HHI $100,000+...........................30.7%
Married.................................57.4%
Children in Household...................30.9%
Attended/Graduated College+.............59.3%
Employed................................48.2%
*****************************************

ORDERING INSTRUCTIONS

- To order this list, contact your List Broker and ask for NextMark List ID #536328 or click here to place your request.
- Use NextMark List Order Entry Software or Bionic Media Planning Software
- 7,500 NAME MINIMUM ORDER $0.00 MINIMUM PAYMENT
- 85% NET NAME AVAILABLE ON ORDERS OF 50,000 OR MORE ($10.00/M RUN CHARGE)
- EXCHANGE IS AVAILABLE
- REUSE IS AVAILABLE

| | |
|---|---|
| POPULARITY: | 100 |
| MARKET: | CONSUMER |
| CHANNELS: | |
| SOURCE: | DIRECT MAIL SOLD |
| PRIVACY: | UNKNOWN |
| DMA?: | YES - MEMBER |
| STATUS: | STANDARD PROVIDER |
| GEO: | USA |
| GENDER: | 75% FEMALE 9% MALE |

| SELECTS | |
|---|---|
| 1 MONTH HOTLINE | $17.00/M |
| 3 MONTH HOTLINE | $14.00/M |
| 3RD PARTY BLOW IN | $10.00/M |
| 6 MONTH HOTLINE | $12.00/M |
| ADULT AGE | $16.00/M |
| AREA OF INTEREST | $16.00/M |
| CHARITABLE DONORS | $16.00/M |
| COA | $13.00/M |
| ETHNIC/ETHNICITY | $16.00/M |
| GENDER/SEX | $9.00/M |
| GEO SET UP | $75.00/F |
| GEO/GEOGRAPHICAL | $9.00/M |
| GIFT GIVERS | $16.00/M |
| INCOME SELECT | $16.00/M |
| NEW TO FILE | $16.00/M |
| NON RECIPROCAL | $10.00/M |
| PAID | $12.00/M |
| POC | $16.00/M |
| POLITICAL PARTY | $20.00/M |
| RELIGION | $16.00/M |
| RENEWALS | $16.00/M |
| SOURCE | $12.00/M |
| ZIP SET-UP FEE | $75.00/F |

| ADDRESSING | |
|---|---|
| KEY CODING | $2.00/M |
| BUSINESS ADDRESS | $11.00/M |
| EMAIL | $75.00/F |
| FTP | $75.00/F |

RELATED LISTS

- ALZHEIMER'S DISEASE RESEARCH
- SPECIAL OLYMPICS INTERNATIONAL
- AICR - AMERICAN INSTITUTE FOR CANCER RESEARCH DONORS
- LEUKEMIA & LYMPHOMA SOCIETY, THE
- WOMAN'S DAY
- WOUNDED WARRIOR PROJECT
- MAYO CLINIC HEALTH LETTER
- AMERICAN LUNG ASSOCIATION DONOR MASTERFILE
- AMERICAN CANCER SOCIETY
- NATIONAL FOUNDATION FOR CANCER RESEARCH

*See* **Exhibit A** hereto.

3. Hearst's practices of knowingly selling and renting mailing lists on which each of its subscribers is identified by name and likeness is not limited to *Good Housekeeping* magazine, but also involves *Woman's Day* magazine and each of its other publications as well. Hearst, either directly or through one or more intermediaries acting on its behalf and at its direction (including through NextMark and/or one or more "list manager" and/or "list broker"), and during the time period relevant to this action, has also knowingly advertised, sold, and rented to various parties the mailing list titled "HEARST CORPORATE MASTERFILE & ENHANCED Mailing List," which contains the Personal Reading Information of all 9,108,589 active U.S. subscribers to all of Hearst's various publications, including Plaintiff and each member of the Class, at a base price of "$115.00/M [per thousand]," (*i.e.*, 11.5 cents apiece), as shown in pertinent part in the screenshot below from list broker NextMark, Inc.'s website:



## HEARST CORPORATE MASTERFILE & ENHANCED Mailing List

Hearst is one of the world's largest publishers of monthly magazines and lifestyle books, covering a broad range of topics including cooking, fashion and beauty, health and fitness, home design and decorating, relationships, and luxury lifestyles.

Get Count | Get Pricing | Get More Information

| SEGMENTS | COUNTS THROUGH 04/06/2021 |
|---|---|
| 9,108,589 TOTAL UNIVERSE / BASE RATE | $115.00/M |
| 9,108,589 ACTIVE SUBS/BOOK BUYERS | $115.00/M |
| 723,523 MAR'21 SUBS/BOOK BUYERS | + $17.00/M |
| 2,465,169 3 MONTH SUBS/BOOK BUYERS | + $14.00/M |
| 3,462,014 6 MONTH SUBS/BOOK BUYERS | + $12.00/M |
| 3,337,070 12 MONTH EXPIRES | $60.00/M |
| 529,836 CHANGE OF ADDRESS | + $13.00/M |
| 5,586,073 E-MAIL ADDRESSES | |
| CATALOG/MERCHANDISE RATE | $80.00/M |
| CHARITABLE FUNDRAISING | $80.00/M |

DESCRIPTION

Hearst is one of the world's largest publishers of monthly magazines and lifestyle books, covering a broad range of topics including cooking, fashion and beauty, health and fitness, home design and decorating, relationships, and luxury lifestyles.

Their powerful portfolio of brands provides a dynamic audience of sophisticated men and women.
Hearst has enhanced these magazine subscribers and buyers with ConsumerView consumer demographic and lifestyle data, creating a merged and deduped masterfile of highly sought-after consumers.

Magazine titles include Bicycling, Car and Driver, Cosmopolitan, Country Living, Elle, Elle Decor, Esquire, Food Network Magazine, Good Housekeeping, Harper's Bazaar, HGTV Magazine, House Beautiful, Marie Claire, Men's Health, Popular Mechanics, Prevention, Road & Track, Runner's World, Town and Country, Veranda, Woman's Day, and Women's Health.

Hearst Specialty Masterfiles available:

Home Masterfile - includes Country Living, Elle Décor, HGTV, House Beautiful, Town & Country, Veranda

Lifestyle Masterfile - includes Food Network Magazine, Good Housekeeping, Woman's Day

| | |
|---|---|
| POPULARITY: | 100 |
| MARKET: | CONSUMER |
| CHANNELS: | |
| SOURCE: | DIRECT MAIL SOLD |
| PRIVACY: | UNKNOWN |
| DMA?: | YES - MEMBER |
| STATUS: | STANDARD PROVIDER |
| GEO: | USA |
| GENDER: | 62% FEMALE 25% MALE |
| SPENDING: | $18.00 AVERAGE ORDER |

| SELECTS | |
|---|---|
| 1 MONTH HOTLINE | $17.00/M |
| 3 MONTH HOTLINE | $14.00/M |
| 3RD PARTY BLOW IN | $10.00/M |
| 6 MONTH HOTLINE | $12.00/M |
| ADULT AGE | $16.00/M |
| AREA OF INTEREST | $16.00/M |
| COA | $13.00/M |
| CONTRIBUTERS/DONORS | $16.00/M |
| ETHNIC/ETHNICITY | $16.00/M |
| GENDER/SEX | $9.00/M |
| GIFT GIVERS | $16.00/M |
| INCOME SELECT | $16.00/M |
| NEW TO FILE | $16.00/M |
| NON RECIPROCAL | $10.00/M |
| PAID | $12.00/M |
| POC | $16.00/M |
| POLITICAL PARTY | $20.00/M |
| RELIGION | $16.00/M |
| RENEWALS | $16.00/M |
| SCF | $9.00/M |
| SOURCE | $12.00/M |
| STATE | $9.00/M |
| ZIP | $9.00/M |
| ZIP SET UP | $75.00/F |

| ADDRESSING | |
|---|---|
| KEY CODING | $2.00/M |
| BUSINESS ADDRESS | $11.00/M |
| EMAIL | $75.00/F |
| FTP | $75.00/F |

*See* **Exhibit B** hereto.

4. Hearst sells and rents these subscriber mailing lists, on which Plaintiff's and each Class member's name appears (along with other Personal Reading Information and the title of the publication to which each of them subscribed), without Plaintiff's or any other Class member's consent (written or otherwise).

5. The ORPL clearly prohibits what Hearst has done. The ORPL provides, *inter alia*, that "a person shall not use any aspect of an individual's persona for a commercial purpose . . . during the individual's lifetime" unless "the person first obtains the written consent to use the individual's persona[.]" Ohio Rev. Code §2741.02(A)-(B). The term "persona" is defined as "an individual's name, voice, signature, photograph, image, likeness, or distinctive appearance, if any of these aspects have commercial value." *Id.* §2741.01(A). And the ORPL defines commercial purpose as, *inter alia*, "the use of or reference to an aspect of an individual's persona . . . [o]n or in connection with a place, product, merchandise, goods, services, or other commercial activities[.]" *Id.* §2741.01(B).

6. Thus, by using Plaintiff's and Class members' names "on or in connection with" the mailing lists that Hearst sells and rents on the open market – *i.e.*, "product[s], merchandise, goods, [or] services" – without any of these individuals' written consent, Hearst has directly violated the ORPL.

7. The ORPL was enacted to recognize each Ohio resident's right of publicity. Hearst has deprived Plaintiff and class members of this right by surreptitiously selling and renting mailing lists on which all Ohio-resident subscribers to its publications are identified by name, without notifying, much less obtaining, written consent from Plaintiff and Class members prior to engaging in these practices, let alone allowing Plaintiff and Class members to control or choose whether and how their identities are used in this way.

8. Hearst's practices of monetizing its subscribers' names and identities for commercial purposes is not only unlawful, but it is also dangerous because it allows any member of the public willing to purchase or rent this data to target particular subscribers, including vulnerable members of society, using their identity, interests, and other demographic data. W hile

Hearst profits handsomely from the use of its customers' identities in this way, it does so at the expense of its Ohio customers' statutory right of publicity.

9. Accordingly, Plaintiff brings this Class Action Complaint against Hearst for its nonconsensual and plainly unlawful use of its customers' personas in violation of the ORPL.

**PARTIES**

10. Plaintiff Dawn Begin is, and at all times relevant to this action has been, a natural person and a resident and citizen of the State of Ohio. During the time period relevant to this action, Plaintiff subscribed to Hearst's *Good Housekeeping* and *Woman's Day* magazines while residing in, a citizen of, and present in Ohio.

11. Defendant Hearst Communications, Inc. is a Delaware corporation with its headquarters and principal place of business in New York, New York. Hearst is the publisher of *Bicycling*, *Car and Driver*, *Cosmopolitan*, *Country Living*, *Elle*, *Elle Decor*, *Esquire*, *Food Network Magazine*, *Harper's Bazaar*, *HGTV Magazine*, *House Beautiful*, *Marie Claire*, *Men's Health*, *Popular Mechanics*, *Prevention*, *Road & Track*, *Runner's World*, *Town and Country*, *Veranda*, *Woman's Day*, and *Women's Health* magazines, as well as its flagship publication *Good Housekeeping* magazine.

**JURISDICTION AND VENUE**

12. This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

13. The Court has personal jurisdiction over Hearst because Hearst maintains its corporate headquarters and principal place of business in New York, New York.

14. Venue is proper in this District pursuant to 28 U.S.C. §1391 because Hearst is subject to personal jurisdiction in this judicial District, because Hearst resides in this judicial District, and because a substantial part of the events giving rise to Plaintiff's claims took place within this judicial District.

## FACTUAL BACKGROUND

### *Ohio's Right of Publicity Law*

15. The Ohio legislature enacted the ORPL to establish as a matter of law that each resident of Ohio has the right of publicity in his or her persona, including name.

16. The ORPL prohibits companies from, *inter alia*, publicly using a person's persona, such as their name, on or in connection with a product, good, merchandise, or service. Specifically, the ORPL provides, *inter alia*, that "a person shall not use any aspect of an individual's persona for a commercial purpose . . . during the individual's lifetime" unless "the person first obtains the written consent to use the individual's persona[.]" Ohio Rev. Code §2741.02(A)-(B). The term "persona" is defined as "an individual's name, voice, signature, photograph, image, likeness, or distinctive appearance, if any of these aspects have commercial value." *Id.* §2741.01(A). Additionally, the ORPL defines commercial purpose as, *inter alia*, "the use of or reference to an aspect of an individual's persona . . . [o]n or in connection with a place, product, merchandise, goods, services, or other commercial activities[.]" *Id.* §2741.01(B).

17. Thus, by using Plaintiff's and Class members' names "on or in connection with" the mailing lists that Hearst sells and rents on the open market – *i.e.*, "product[s], merchandise, goods, [or] services" – without any of these individuals' written consent, Hearst has directly violated the ORPL, in complete disregard to the legal responsibilities owed to these individuals.

### *Hearst Unlawfully Sells and Offers to Sell Mailing Lists Containing Its Customers' Names, Addresses, and Other Personal Reading Information*

18. Hearst maintains a vast digital database comprised of its customers' identifying information and other Personal Reading Information.

19. Hearst, either directly or through one or more intermediaries acting on its behalf and at its direction (including through NextMark and/or one or more "list manager" and/or "list broker"), sold and rented (and continues to sell and rent) mailing lists containing its customers' names, addresses, and other Personal Reading Information on the open market to anyone willing to pay for them, including on a regular basis to data miners, aggregators, appenders, and

cooperatives, aggressive marketing companies, and others. The name and address (among other information) of each subscriber appears on or in these lists and identifies each such person as having subscribed to a particular magazine from Hearst.

20. Hearst does not seek (much less obtain) its customers' prior written consent to any of these practices and its customers remain unaware that their names and personas, as well as addresses, and other Personal Reading Information and sensitive demographic details (including information identifying the particular publication to which each of them subscribed), are on or in the mailing lists that Hearst sells and rents on the open market to any member of the public interested in purchasing them or having access to them.

21. Consumers can subscribe to Hearst publications through numerous media outlets, including the Internet, telephone, or traditional mail. Regardless of how the consumer subscribes, Hearst uniformly fails to obtain written consent from – or even provide effective notice to – its customers before using their personas on or in connection with the subscriber mailing lists that it sells and rents.

22. As a result of Hearst's data compiling, sales and rental practices, consumers, especially the more vulnerable members of society, are at risk of serious harm from, for example, scammers who can purchase or rent mailing lists that include subscribers' personas (*i.e.*, names).

23. By and through Hearst's actions, Hearst has intentionally publicly used Plaintiff's and numerous other Ohions' names and personas on or in connection with products, merchandise, goods, or services, without any of these individuals' prior written consent, in direct violation of the ORPL.

## CLASS ACTION ALLEGATIONS

24. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

25. Plaintiff brings this action as a class action, pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of a class consisting of "all Ohio residents who, at

any point in the relevant statutory period, had their names appear on or in connection with a subscriber mailing list sold or rented by Hearst without written consent" (the "Class").

26. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes that there are millions of members in the Class. Class members may be notified of the pendency of this action by mail and/or publication through the records of Defendant.

27. Plaintiff's claims are typical of the claims of Class members, who were all similarly affected by Defendant's wrongful conduct in violation of the ORPL.

28. Plaintiff will fairly and adequately protect the interests of Class members and has retained counsel competent and experienced in complex class action litigation.

29. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the members of the Class are:

(a) whether the subscriber mailing lists that Hearst sells to the public on the open market are "product[s], merchandise, [or] good[s]," and whether its practices of selling or renting such lists are "services," within the meaning of the ORPL;

(b) whether Hearst used Plaintiff's and the Class's "names" or "personas" "on or in connection with" such subscriber mailing lists;

(c) whether Hearst obtained written consent before selling or renting such subscriber mailing lists; and

(d) whether Hearst's practices of selling or renting such subscriber mailing lists violated the ORPL.

30. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Further, the expense and burden of individual litigation makes it impossible for Class members to individually

redress the wrongs done to them. In addition, individualized litigation would increase the delay and expense to all parties, multiplies the burden on the judicial system, and presents the potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues. There will be no difficulty in the management of this action as a class action.

## CLAIM FOR RELIEF
**Violation of the Ohio Right of Publicity Law §2741, *et seq.***
**(By Plaintiff on Behalf of Herself and the Class)**

31. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

32. Plaintiff brings this claim individually and on behalf of members of the Class against Defendant.

33. Plaintiff is a natural living person and therefore an "individual" within the meaning of the ORPL. *See* Ohio Rev. Code. §2741.02.

34. Hearst is a corporation and therefore a juristic "person" within the meaning of the ORPL. *See id.*

35. Plaintiff, an Ohio resident, subscribes to *Good Housekeeping* and *Woman's Day* magazines from Hearst. Each member of the Class likewise resides in Ohio and has subscribed to a Hearst publication.

36. Prior to and at the time Plaintiff subscribed to *Good Housekeeping* and *Woman's Day* magazines, Hearst did not notify Plaintiff or the members of the Class that it would use their names or other identifying attributes "on or in connection with" the subscriber mailing lists that it sells and rents. Plaintiff and Class members have never given Hearst authorization to do so.

37. After Plaintiff subscribed to *Good Housekeeping* and *Woman's Day* magazines

from Hearst, and during the relevant statutory period, Hearst, either directly or through one or more intermediaries acting on its behalf and at its direction (including through NextMark and/or one or more "list manager" and/or "list broker"), knowingly advertised the sale and rental of, and actually sold and rented, to various members of the general public mailing lists containing Plaintiff's Personal Reading Information (which identified her as an individual to whom Hearst had sold *Good Housekeeping* and *Woman's Day* magazine subscriptions), including to data aggregators, data appenders, data cooperatives, and various other persons interested in buying them to contact Hearst subscribers, without first obtaining Plaintiff's written consent or even giving her prior notice of its use of her name and identity in this way. Likewise, during the statutory period relevant to this action, Hearst knowingly advertised the sale and rental of, and sold and rented, to various members of the public, mailing lists containing the names and addresses (among other Personal Reading Information) of all of the individuals who had subscribed to its various publications, including Plaintiff and each member of the Class.

38. The name "Dawn Begin," one of the identifying attributes Hearst used on or in connection with the subscriber mailing lists that it sells and rents, is "the actual, assumed, or clearly identifiable name or reference to [her] that identifies [her]" as a person. Accordingly, Hearst used Plaintiff's "name" or "likeness," and thus her "persona," within the meaning of the ORPL. *See id.* §2741.01(A), (C).

39. As alleged above throughout, Hearst knowingly used Plaintiff's and each Class member's names or likenesses (and thus their personas) on or in connection with its products, merchandise, goods, or services, and thus for "commercial purposes" within the meaning of the ORPA. *See id.* §2741.01(b)(1).

40. Significant commercial value exists in the aspects of Plaintiff's and Class members' names that Defendant uses on or in its products, goods, merchandise, and services.

41. Hearst did not request, much less obtain, any prior "written, electronic, digital, or any other verifiable means of authorization" from Plaintiff or any Class member prior to using their names or identities (*i.e.*, personas) for commercial purposes within the meaning of the ORPL.

*See id.* § 2741.01(F).

42. Accordingly, by using Plaintiff's and each Class member's "name," "an[] aspect of [each of their] persona[,] for a commercial purpose . . . during their lifetime[s]," and while they resided in Ohio, without "written consent," Hearst directly violated the ORPL. *See id.* §§2741.01(A), (C), 2741.02(A)-(B).

43. Plaintiff's injury was suffered in Ohio, where she resides. Each Class member's injury was likewise suffered in Ohio, where each such person resides.

44. Hearst knowingly and willfully used Plaintiff's and the other Class members' names and identities without their written consent in this way. Hearst, either directly or through one or more intermediary acting on its behalf and at its direction (including through NextMark and/or one or more "list manager" and/or "list broker"), directed and oversaw both the advertising of the sale and rental of the subject subscriber mailing lists on the open market as well as the actual sales and rentals of such subscriber lists to various third parties who purchased or rented such lists during the time period relevant to this action. Hearst reaped significant monetary profits as a result of its sales and rentals of subscriber mailing lists on which and in which Plaintiff's and the other Class members' names and identities appeared.

45. Plaintiff and the members of the Class have been injured, while residing in Ohio, from the violations of their rights of publicity caused by Hearst's nonconsensual use of their names and identities (and thus their personas) in this way.

46. On behalf of herself and the Class, Plaintiff seeks: (1) statutory liquidated damages of between $2,500.00 and $10,000.00 per violation to herself and each Class member pursuant to Ohio Rev. Code. §§2741.07(A)(1)(a)-(b) & 2741.07(A)(2); (2) an award of punitive or exemplary damages pursuant to Ohio Rev. Code. §2741.07(A)(1)(c); (3) an injunction requiring Defendant to obtain prior written consent from Ohio customers prior to the use of their names or identities on or in the subscriber mailing lists that Hearst advertises and sells and rents pursuant to Ohio Rev. Code. §2741.07(D)(3); and (4) costs and reasonable attorneys' fees pursuant to Ohio Rev. Code. § 2741.07(D).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks a judgment against Defendant as follows:

A. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

B. For an order declaring that Defendant's conduct as described herein violates the Ohio Right to Publicity Law, Ohio Rev. Code. §2741, *et seq.*;

C. For an order finding in favor of Plaintiff and the Class on the count asserted herein;

D. For an award of statutory liquidated damages of between $2,500.00 and $10,000.00 per violation to herself and each Class member pursuant to Ohio Rev. Code. §§2741.07(A)(1)(a)-(b) & 2741.07(A)(2);

E. For an award of punitive or exemplary damages pursuant to Ohio Rev. Code. §2741.07(A)(1)(c)

F. For an injunction requiring Defendant to obtain prior written consent from Ohio customers prior to the use of their names or identities on or in the subscriber mailing lists that Hearst advertises and sells and rents pursuant to Ohio Rev. Code. §2741.07(D)(3);

G. For an order awarding Plaintiff and the Class their reasonable costs and reasonable attorneys' fees pursuant to Ohio Rev. Code. §2741.07(D); and

H. For prejudgment interest on all amounts awarded.

**JURY DEMAND**

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated: November 8, 2021

SCOTT+SCOTT ATTORNEYS AT LAW LLP

By: /s/ Thomas L. Laughlin, IV

THOMAS L. LAUGHLIN, IV
RHIANA SWARTZ
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169

Tel.: 212-223-6444
Fax: 212-223-6334
tlaughlin@scott-scott.com
rswartz@scott-scott.com

*Counsel for Plaintiff and the Putative Class*